The final case on for argument is Shaw v. MTA Good morning, Your Honor. May it please the court, my name is Amish Doshi with Magnosian Chi. On behalf of the appellant, Mr. J. Andrew Shaw, I would like to reserve three minutes for rebuttal, Your Honor. Very simply, Your Honor, we're asking this court with respect to four of the positions, applying the same analysis that the district court applied with respect to the two positions where the judge denied summary judgment to the defendant, applying the same analysis and the same facts are almost identical with respect to the four positions that are on appeal here. And basically, the summary judgment should not have been based on material issues of fact, primarily on two issues. First, under the law, whether Mr. Shaw's qualifications were so superior that no reasonable person would have chosen the selected candidate that was chosen by the employer. And alternatively, and in conjunction, the reasons that were proffered by the employer for denying Mr. Shaw the promotions, the four promotions at issue here, the reasons were a pretext for unlawful discrimination. Applying the analysis with respect to the first issue on the line general manager positions, five individuals were selected. Judging by the objective criteria listed on the job vacancy notices for the line general manager position of education and experience, comparing those criterias, Mr. Shaw was well superior with respect to any of the candidates that were selected. There was only one candidate that held a master's degree, which Mr. Shaw has. All the others had either no college degree or a college degree. Most of the times it were in transportation management, which was the degree held by Mr. Shaw. In terms of the experience, Mr. Shaw had been a general superintendent, the position immediately below the position that was applied for. And at that level, he had at the time of the promotion 13 years, while all the other candidates had anywhere from one to three, with the exception of one candidate that had, I believe it was seven. I just ask you, one of the two positions that did go to trial was line general manager, April 2009. Would there be any overlap in the evidence on the trial of that position with these other LGM positions? There might be some overlap, but I believe the decision makers were different, so there are witnesses as well. There would be some overlap, at least with respect to the plaintiff's . . . You're talking about participation in the decisions, right? I'm sorry? Were some of the employees had participation that overlaps some of these non-promotion decisions, right? Absolutely. The plaintiff would be one for starters. There would be overlap, yes. I'm not talking about the plaintiff, but I'm talking about the defendant's employees. Yes, because this relates to the line general manager position. The history of the New York City Transit changed in relation to the line general manager position and command, so with respect to that, there would be overlap as to why the change in structure was occurred and the reasons as well. There probably would be some overlap, yes. Comparing the decision makers, for example, in the October 2007 line general manager that you're now addressing and the April 2009 one that I guess went to trial, right? That's correct. It looks to me as if the hiring officers in 2007 were Pierce and Feil, and they don't show up on the judge's list of decision makers in 2009, and the people who were chosen in 2009, I guess by definition, are not going to be ... There's a long list of people who were selected over Mr. Shah in the 2009 example, but I don't see quickly any overlap. In fact, two of the people who were selected in 2007, Broussardi and Cesspathrie and Lombardi, were all people who were selected in 2007 and were decision makers in 2009, so they're different casts of characters. There are different, but Mr. Broussardi had testified at trial. I imagine with respect to the 2007 line general manager position, he would be a repeat witness because he was selected. Not about different subject matters. In 2007, you're talking about what a great candidate he was, and in 2009, he would be testifying about how he made the decision not to hire Mr. Shah or to promote Mr. Shah at that point. That is correct. They would be about different items, but there would be some overlap in terms of the witnesses. Similarly, moving on to the position of assistant chief mechanical officer in 2008, that is interesting ... Before we move on from the line general manager in 2007, because I think that's probably the one that seemed the best case to me, and it is evidently the one you thought so, too, because you started with it. In that one, some of the reasons that were given were that he was unpopular with the union, Mr. Shah was unpopular with the unions, and you're saying that's false and pretextual. Is that the position? Absolutely, Your Honor, and we had submitted plenty of evidence, including but not limited to the fact that Mr. Shah's own affidavit that he was not aware of or that he was not reprimanded or spoken to about any alleged issues. If you look at his performance reviews for a 10-year period, eight of the 10 years is an excellent rating, overall rating, which is the highest rating. The other two was a good, which is the second highest rating. Majority of those performance reviews talks about how Mr. Shah has an excellent working relationship, and that's a quote, with other departments and managers. In addition, a Nobody says anything about he has trouble with unions in that. No one except for Ms. Pierce's affidavit, and then there was a passing reference by Mr. Sola relating to another position that he had heard of some, quote, friction with the union. So in addition, there was also two other employees at the New York City Transit Authority, one in HR, who testified that Mr. Shah had a, quote, solid reputation, and as well as Mr. File had also, I'm sorry, not Mr. File, Mr. Kevin O'Connell, another employee at the New York City Transit with respect to another position, had said he would have selected Mr. Shah primarily because he had a good working relationship with folks, was one of the reasons. You place some stress on, oh, and one other question about the 2007. This is one of the cases where the EEOC thought there was discrimination. That is correct. That line general manager position, as well as the next one, assistant chief mechanical position, for both of them, the EEOC ruled that they believed discrimination was a factor. That's the January 2008 one? Yes. And that's one of the ones you're challenging, or not? Yes. Okay. And just, if I could ask, I think it is the law that we consider all of these cases separately. Should I be troubled at all by the structure of this case? Here we had Mr. Shah originally claimed that he was discriminated against in 13 separate instances. The arguments seemed to me to be, in general, similar, though each case presents its own nuance. The district court allowed two to go to trial, granted summary judgment to the defendant on 11. Seven of those 11, I mean, to suggest that you concede that these were not discrimination, but you're not choosing to challenge on appeal. The two that went to trial, Mr. Shah lost. And now we're going to pick over four more and maybe find one or two that maybe summary judgment should be denied on, and then we go back and have yet another trial out of all of these 13 original claims. Should we be bothered at all by that situation? It's not ideal, Your Honor. But, however, the summary judgment motion did not become a final order until . . . Until the end, right. You couldn't have appealed them at the time and so on. But it strikes me that very often when we have these cases, the issue is, should the plaintiff be given a day in court? And your client had a day in court on what presumably the district judge thought were the two best shots. And now we're looking at maybe the two next best shots at this point. Respectfully, I would submit that, in our opinion, the two best shots were the line general managers in 2007 and the assistant chief mechanical in 2008 where EEOC had found that there was discrimination. But I agree that it's not an ideal situation where we already had a trial on other positions and we may potentially have to go back with respect to a stronger . . . what we believe is stronger. And, frankly, we thought that should have been the survived summary judgment. Great. Thank you, Mr. Efron. You've reserved . . . Excuse me, Mr. . . . Thank you. We'll reserve time. We'll hear from Mr. Efron. Good morning, Your Honors. May it please the Court, my name is Steve Efron. I'm appearing for the Defendant Compelli MTA New York City Transit. What I would say initially is that we're dealing with positions here that are somewhat rarefied at the Transit Authority. They're very high-level positions requiring a great deal of skill, a great deal of knowledge, and a great deal of experience. Mr. Shah was interviewed for each and every one of the positions at issue in this case on this appeal. Many people were not even interviewed. So the Transit Authority is not arguing here that Mr. Shah was not qualified, that he wasn't capable of doing the job. The testimony and deposition and an affidavit was that, yes, he was qualified. So decision-makers are confronted with three, four, five qualified people, and they have to make a decision on that basis. It's not a mechanical decision. For instance, for the line program that we were just talking about, the JVN, the Job Vacancy Notice, requires a baccalaureate degree from an accredited college in transportation management and eight years of managerial or supervisory experience or a suitable equivalent of experience and education, which the president of the Transit Authority testified in the deposition is human resources, boilerplate. Can a court really say that if Mr. Shah had 22 years of managerial experience, but the selected candidate had 15 years of managerial experience, both well exceeding the minimum requirements, that the additional seven years of managerial experience that Mr. Shah had makes him so superior to the selected candidate? I think that's a matter for a decision-maker with experience in the field, years and years at the Transit Authority, to determine whether Mr. Shah's 22 years of managerial experience really gives him the upper edge, the advantage, over an employee who came from a different department, has a different skill set that perhaps the decision-maker is looking for, but has only 15 years of experience, and that's true. How about the factor of antagonism with the union? Wasn't that a part of the 2007 decision? Yes. Judith Pierce indicated in an affidavit that she reached out to the vice president of human resources, a fellow by the name of Michael Landino, to find out whether any of the candidates had friction or difficulty with the union, because the new president, Mr. Roberts, wanted to mend relations with the union. There had been a disastrous, catastrophic Christmas season strike in 2005, and I mention that because apparently good relations with the union were not a high priority. Maybe it was a badge of honor if a manager had friction with the union, but that changed when Mr. Roberts came in in 2007, and the fact that performance appraisals don't address that issue one way or the other shouldn't be surprising in an environment where there's antagonism between the union and management was antagonism as a matter of course for many years. But Mr. Shah says that's not true. Isn't that an issue, not a factual issue? I'm chuckling a little bit because Mr. Shah also says that he was so superior to the selected candidates that no rational person would have selected the candidate that was chosen rather than Mr. Shah. That contradicts, that statement, that opinion of Mr. Shah's contradicts the decision maker's opinion. Does that create an issue of fact that Mr. Shah thinks he's so superior? That's a judgment call and a legal conclusion. Whether he had strife with unions seems to me more of a factual question. Did he ever have somebody he didn't get along with or not? And we've got a hearsay statement that somebody in management thought that he did, and his statement that nobody ever said that to me. I never had any problems with the union, period. That's a factual statement. It's factual to a certain extent. It can also be a matter of opinion. Mr. Shah's understanding of what constitutes good relations with the union may to somebody else be antagonistic or may be disrespectful of the union. But doesn't that come down to being something that needs to be decided by a jury? If it were a pretext for discrimination, I would say yes. But there's no evidence whatsoever that Ms. Pierce, who offered that opinion in an affidavit, was operating in anything but good faith. She called the vice president of labor relations, Michael Landino, got his opinion. That's not hearsay because it's not for the truth of it at all. It's for what she thought because she had a basis for what she thought. Right. A decision maker will often consult other people who are more familiar with the candidate. What do you think of this candidate? That's not hearsay. That's how these decisions are very often made. So I don't believe, Judge Hall, that we have a disparity in qualifications or credentials that are so great here. I don't even think one can make an honest assessment that there is a difference, a significant difference, let alone so superior to trigger the Bernie standard. So we just have Ms. Pierce making this statement, which applies only to the line general manager program in 2007, about friction with the union. She makes the statement in good faith. Is that enough to carry this to the jury? A jury can say, well, maybe Mr. Shah is correct that he had better relations with the union than Ms. Pierce thought, ergo discrimination. The cases I've reviewed, including Bernie against Town of Cromwell, and I should point out on page 29 of our brief, I cite, and I regret this deeply, I cite the Southern District decision in Walsh against New York City Housing Authority. That decision was reversed in opinion by Judge Hall this past year, and I didn't realize it. But in that decision as well, Walsh against New York City Housing Authority, there's much more going on than just one instance where the plaintiff can say, ha ha, what you said is false, it's not accurate, we're going to a jury. I've never seen a case in years and years and years where a plaintiff doesn't come back in an affidavit or in a deposition and say, so and so's opinion to me that I had a poor performance is not accurate. My performance was actually good. Issue of fact, pretext for discrimination. There has to be more than that. I just want to point out that with respect to the comparative or credentials or qualifications, Mr. Shah's raising issues with respect to Vice President's CMO position in 2012, where the selected candidate had an engineering degree from Annapolis, a master's in engineering from NYU. And Mr. Shah's tactic is when the education credentials of the individual are as good or less than Mr. Shah's, he focuses on years of experience. Where the years of experience are greater than Mr. Shah's, he focuses on the education. But that type of rote mechanistic approach is not taken by decision makers, which is why you have some people with advanced degrees and yet other people with no college degree at all. If they're looking for the line general manager program, Ms. Pierce testified in an affidavit that they were looking particularly for people from rapid transit operations as opposed to car maintenance. Car maintenance fixes, repairs, maintains the trains, rapid transit, or the people actually move them in passenger service from station to station. And so Judge Corman, in his opinion, said, I'm not going to make a comparison between Mr. Shah's credentials and the credentials of somebody from rapid transit operation, because they're looking specifically for somebody from RTO. And that explains Herb Lambert, who's from RTO, and Lou Broussardi, who's from RTO. There was no competition, in essence, between Mr. Shah and those candidates, because they were looking for those specific skills that Mr. Shah didn't have. Same is true of Griselda Cespedes, who was assistant station manager for a decade or so. They were looking for somebody who was capable of maintaining safe and efficient stations. That was not Mr. Shah's background, but it was Ms. Cespedes. So how do we parse these things and say so and so is more qualified than so and so when they have different skill sets that may be needed at different times? And with that, I will allow Mr. Shah to rebut in three minutes everything I've just said. And for that rebuttal, we'll call on Mr. Doshi. Thank you, Your Honor. As the judges have pointed out, the fact of whether or not Mr. Shah had issues with the union is a factual issue. And the judge basically decided that there wasn't and granted summary judgment. It's a very subsidiary factual issue. For example, Mr. Efron refers to Ms. Cespedes. She also had a bachelor's and master's degree in engineering. She had 14 years in management. Now, you can make the case that Mr. Shah in certain ways on paper outranked that. He had more years in management. But that doesn't look like something that you could come close to saying his credentials are so superior to hers, right? There's no black and white test. I'm not going to suggest that there's a black and white test. It's a totality of circumstances. And you have to look at not just that. With respect to the- Well, there are like five people. She's just one of them. But it's just this is the difficulty of parsing through such a complicated record. There are lots of comparisons that are being made to lots of different people who all- I think this is-I think both of you would agree. There are multifactorial points of comparison for pretty much everybody in here. Absolutely. I'm not going to stand here and say that you can look at something and there's a litmus test for it. It's a totality of circumstances. The education and the experience requirement is just one of those factors. In fact, Mr. File, who was a decision maker with respect to this position, in comparing Ms. Cespedes and Mr. Shaw, he actually testified in his deposition that between those two criterias, he would have selected Mr. Shaw over Ms. Cespedes. And that's in our papers as well. But there are these other factors, these reasons, alleged reasons that are made which suggest pretext. One of them I mentioned about this union issue, question of fact. The other one is the reasons that they give. It's almost like a moving target. With respect to the ACMO, Assistant Chief Mechanical Position, in 2007, the candidate that was selected, they justified it, forgetting the union for a second, they said that the individual had more North Division maintenance shop experience over Mr. Shaw, so we selected him. That was the reason. Fast forward to 2010, we have Mr. Guerra. Forget North Division. Forget New York. Forget the United States of America. His relevant experience is from Toronto, Canada, and they selected him. The justification for why they selected one in one scenario versus other is a moving target. I wish they didn't pick Mr. Guerra, it sounds like, but that's based on things that happened after the fact. My concern, though, is of course it's a moving target, and it's a moving target in all honesty on your side as well, as Mr. Efron points out, that, yeah, you can point to in this case Mr. Shaw is ahead on one criterion, and in that case he's behind on the same criterion, but he's ahead on something else. What this is going to happen in these complicated comparisons, I just want to ask you, I don't think this is determinative, but it is true, is it not, that there is nothing in this case, there's no evidence at all that I would call like extrinsic evidence of bias against South Asians, or I'm not sure what the category is that we've been talking about, Indians, South Asian, or people of Indian origin, South Asian origin generally, Asian origin generally, but there's no sort of evidence of anybody having shown bias against any of those groups, or am I wrong about that? I do not have a smoking gun. I do not have a memo that says we discriminate. I do not have somebody saying we're never, I do not have that, no. Everything is circumstantial evidence. But the circumstantial, and the circumstantial for the most part is just about comparing the credentials and trying to decide if this is an inexplicable decision to pick X over Mr. Shaw. Comparison, yes, as well as. Yes, plus these indications in some cases of pretext or of reasons given that are disputable. Yes, and frankly, that is the issue, that there are a lot of these issues that should have gone to the jury, not decided as a matter of law, is precisely the point. I see I'm well over my time. Thank you. I would respectfully request that with respect to these four positions, the lower court's summary judgment grant be reversed. Thank you. Thank you, Yoshi. And thank you both. We'll reserve decision. I will ask the clerk please to adjourn court. Court is adjourned.